IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-2755-MSK-KLM

ROBERT KINDELL,

    Applicant,

v.

WARDEN WILNER, USP-Florence,

    Respondent.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [Docket No. 1; Filed November 24, 2009] filed *pro se* by Robert Kindell ("Applicant"). Respondent filed an Answer Brief ("Answer Brief") objecting to the Application on March 8, 2010 [Docket No. 10]. Applicant filed a reply on March 15, 2010 [Docket No. 11] (hereinafter "Traverse"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Application has been referred to this Court for recommendation. The matter has been fully briefed and is ripe for resolution. For the reasons set forth below, the Court recommends that the Application be **DENIED**.

### I. Statement of the Case

At the time when Applicant signed his Application, he was a federal prisoner incarcerated at the United States Penitentiary in Florence, Colorado ("USP-Florence"). *Application* [#1] at 1. He has since been transferred to the Federal Correctional Institution

in Pollock, Louisiana ("FCI-Pollock"). The events giving rise to the Application occurred while Applicant was incarcerated in the United States Penitentiary in Lee County, Virginia ("USP-Lee").

Pursuant to his Application, Applicant claims that the prison did not provide due process and falsified prison records during a prison adjudication concerning allegations that Plaintiff refused to urinate for a drug test. *Application* [#1] at 2. Applicant seeks to have his disciplinary conviction overturned, his record expunged and his good-time credits reinstated. *Id.* at 5. Specifically, Applicant raises four grounds for relief.

Claim I     USP-Lee officials prevented Applicant from offering exculpatory witnesses and documentary evidence during Applicant's May 2, 2008 disciplinary hearing. *Id.* at 3.

Claims II, III[1]     USP-Lee officials failed to provide Applicant with a sufficient amount of time to review the amended incident report before the disciplinary hearing. *Id.* at 3-4.

Claim IV     Applicant's disciplinary conviction was not based on "actual evidence." Specifically, Applicant alleges that USP-Lee officials falsified the amended incident report to bolster the charge against him. *Id.* at 7.

Claim V     USP-Lee officials failed to respond to Applicant's appeal in a timely way. *Id.* at 7-8.

As a preliminary matter, Respondent contends that the Court does not have

---

[1] Claims II & III are addressed in tandem because Claim II involves the allegation that Applicant did not have sufficient advance notice to review the amended incident report. Claim III involves the allegation that Application only had forty-three minutes to review the amended incident report. The substance of both allegations is that Applicant's right to due process was violated because he did not have sufficient time to review the amended incident report.

2

jurisdiction over the Application because Applicant was not incarcerated in Colorado when the Application was filed. *Answer Brief* [#10] at 1-2. As to the merits of Applicant's due process claims, Respondent contends that Applicant "was not denied due process." *Id.* at 2. Specifically, Respondent argues that Applicant: (1) "was provided with more than 24 hours advanced written notice"; (2) that regardless, he "waived the 24 hour notice requirement"; (3) he waived his right to present witnesses and documents in his defense; and (4) the Disciplinary Hearing Officer's ("DHO") written "findings were based on evidence in the record." *Id.* at 2-3. Respondent does not address Applicant's fourth claim relating to his appeal.

The facts giving rise to Applicant's claims are as follows. On April 3, 2008, Applicant was asked to provide a urine sample for a drug test but did not urinate within the two-hour time frame required by the Bureau of Prison's ("BOP") drug testing protocol. *Application* [#1] at 2, 6. Applicant claims that he had not had anything to drink before the drug test. *Id.* at 6. As a result, Applicant contends that he "was physically incapable of urinating." *Id.* Applicant's failure to urinate violated BOP policy and an incident report was prepared and given to Applicant in advance of an April 9, 2008 informal hearing in front of the Unit Disciplinary Committee ("UDC"). *DHO Report* [#10-3] at 3. After this initial hearing, the UDC referred the charge to a DHO. *Id.* Although not entirely clear from the record, Applicant may have met with the DHO and argued that he had not received water to help him urinate. *See Application* [#1] at 6; *see also DHO Report* [#10-3] at 3. Thereafter, the DHO found that the incident report "had not given [Applicant] proper notice of the charges against [him]." *DHO Report* [#10-3] at 3. The DHO asked for an amended incident report to be prepared and set a hearing for May 2, 2008 to address the charge against Applicant.

3

*See id.* Although the prison's records show that Applicant was delivered a copy of the amended incident report on April 23, 2008, he appears to dispute this fact. *Compare Application* [#1] at 3, *with id.* at 10. Instead, Applicant claims that he received the amended incident report less than an hour before the May 2, 2008 hearing. *Id.* at 3. The amended incident report contained an allegation that Applicant was offered water in advance of his failed drug test. *DHO Report* [#10-3] at 3. At the conclusion of the May 2, 2008 hearing, the DHO found Applicant guilty of the charge. *Id.*

In relation to the May 2, 2008 hearing, Applicant claims that the DHO did not allow him to call witnesses or present documentation to demonstrate his good faith effort to comply with the drug test. *Application* [#1] at 6. In addition to taking issue with the amount of time before the hearing that he received the amended incident report, Applicant also alleges that the report was falsified to include evidence that he had been offered water to help him urinate. *Id.* at 4, 6-7.

## II. Standard of Review

Applicant is challenging a disciplinary sanction he received impacting the length of his federal sentence pursuant to 28 U.S.C. § 2241. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Because Applicant is proceeding *pro se*, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects cause by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the Court is not the nonmoving party's advocate and must nevertheless deny an application that is based on vague or conclusory allegations. *Hall*, 935 F.2d at 1110.

### III. Analysis

#### A. Jurisdiction

Respondent argues that the Court lacks jurisdiction over the November 24, 2009 Application because Applicant was not incarcerated in Colorado when it was filed. *Answer Brief* [#10] at 1-2. In response, Applicant appears to rely on the mailbox rule, arguing that he turned in the Application for mailing while still incarcerated at USP-Florence in Colorado. *See Traverse* [#11] at 1.

"A petition under 28 U.S.C. § 2241 . . . must be filed in the district where the prisoner is confined." *Bradshaw*, 86 F.3d at 166. Once filed, "[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief . . . ." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985). Generally, a *pro se* prisoner's complaint is considered "filed" at the time it is given to prison officials. *Houston v. Lack*, 487 U.S. 266, 276 (1988). The *Houston* mailbox rule applies to habeas petitions in the same way it applies to civil rights claims. *See Marsh v. Soares*, 223 F.3d 1217, 1218 & n.1 (10th Cir. 2000) (noting that "[l]iberal application of the [*Houston*] mailbox rule causes us to treat the petition as placed in the hands of prison authorities on the same day it was signed" (citation omitted)).

Pursuant to the mailbox rule, there are two ways an inmate can establish the filing date of his application. *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005). The first is to use the prison's legal mail system, which presumably logs all legal mail through straightforward and reliable procedures. *See id.* In the event that the prison does not have a legal mail system, the second method is to "submit a declaration [in compliance with 28

5

U.S.C. § 1746] or notarized statement setting forth the [Application's] date of deposit with prison officials and attest that first-class postage was pre-paid." *Id.* (citation omitted).[2]

To resolve this issue, the Court must determine the date on which Applicant actually filed his Application. The adequacy of the USP-Florence legal mail system is not known to the Court at this time. However, because the Tenth Circuit recognizes an alternative manner by which to establish a filing date for purposes of the prison mailbox rule, it is unnecessary to address the USP-Florence system. *See id.* The Court determines that the Application, which is signed under penalty of perjury, fulfills the *Philpot* requirements here. *See Application* [#1] at 5. The Application was signed on September 25, 2009. *Id.* Thus, Applicant has complied with the "second mechanism for establishing a filing date for purposes of the mailbox rule," *Philpot*, 420 F.3d at 1165, and his Application will be deemed filed on September 25, 2009. *See Marsh*, 223 F.3d at 1218 & n.1. Respondent's affidavit confirms that "Applicant arrived at USP[-]Florence on June 23, 2009, where he remained until his transfer on November 9, 2009." *Declaration* [#10-1] at 2 n.2. Therefore, the Court concludes that Applicant filed his Application while he was incarcerated at USP-Florence. Accordingly, Colorado has jurisdiction over the Application.[3]

**B. Due Process**

Respondent claims that Applicant received due process during all stages of his

---

[2] An appropriate declaration for statements pursuant to 28 U.S.C. § 1746 is: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." *Philpot*, 420 F.3d at 1166 n.6 (citing 28 U.S.C. § 1746).

[3] Although not presently incarcerated within the Court's jurisdiction, Applicant's subsequent transfer to another jurisdiction does not defeat this Court's authority to issue a judgment. *Santillanes*, 754 F.2d at 888 (noting that jurisdiction "is not destroyed by transfer of the petitioner and the accompanying custodial change").

disciplinary proceedings. *Answer Brief* [#10] at 2-3. By contrast, Applicant argues that the procedures utilized prior to and during the May 2, 2008 hearing did not provide due process. Specifically, Applicant contends that (1) he was prevented from offering witnesses and documentary evidence at the May 2, 2008 DHO hearing; (2) he did not receive an incident report within twenty-four hours of the hearing in violation of 28 C.F.R. §§ 541.15, 541.15 and 541.17; (3) there was insufficient evidence to support his conviction; and (4) USP-Lee officials did not respond to his appeal within an adequate time period. *Application* [#1] at 3-8.

As a preliminary matter, "[i]t is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguard afforded by the Due Process Clause of the Fourteenth Amendment.'" *Howard v. BOP*, 487 F.3d 808, 811 (10th Cir. 2007) (citations omitted). However, the process that is due a prisoner in this context is limited and must only satisfy three constitutional criteria: (1) advance written notice of the disciplinary charges must be provided; (2) the opportunity to call witnesses and present evidence, when such would not be inconsistent with the prison's safety goals, must be afforded; and (3) a written opinion by the DHO of the evidence relied upon to impose a disciplinary sanction must be provided to the inmate. *Id.* at 812. Respondent argues that Applicant's proceedings satisfied the requirement of due process. Specifically, Respondent contends that Applicant received adequate written notice of the disciplinary charges brought against him. *Answer Brief* [#10] at 2. Further, Applicant was afforded the opportunity to call witnesses and present documentary evidence in his defense. *Id.* at 2-3. Finally, Applicant received a written opinion containing sufficient evidence relied upon in support of the decision. *Id.* at 3. As noted above, Respondent fails to address, however,

7

whether and to what extent Applicant's fourth claim regarding his appeal of the DHO's opinion has any merit.

### 1. Witnesses and Documentary Evidence

Applicant argues that he was denied due process because he was not allowed to present exculpatory evidence in the form of witnesses or documentation. *Application* [#1] at 4. The corresponding statutory provisions (which Applicant does not cite, but which the Court considers because Applicant is proceeding *pro se*) are 28 C.F.R. § 541.15(d) & (i). Specifically, 28 C.F.R. § 541.15(d) provides that an "inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf." Additionally, section 541.15(i) allows an accused inmate to provide "the names of any witnesses the inmate wishes to be called to testify at the hearing and what testimony they are expected to provide."

Applicant's contention that he was not allowed to provide documentation or witnesses is contradicted by the record. First, the DHO Report indicates that Applicant was provided an opportunity to speak on his behalf, and he did so when he informed the DHO that he "tried but [he] couldn't go." *DHO Report* [#10-3] at 3. Second, the DHO noted that Applicant was offered staff assistance and the opportunity to present other witnesses, but Applicant declined. *Id.* at 1. The DHO's acknowledgment is further substantiated by Applicant's signature on a form indicating that he had been informed of his rights to call witnesses and present evidence on his behalf. *Inmate Rights Form* [#10-3] at 7; *DHO Report* [#10-3] at 1. When asked if he understood his rights Applicant replied that he did. *DHO Report* [#10-3] at 1. Given Applicant's receipt of the form indicating his rights and the DHO's reminder, it cannot be reasonably argued that he was unaware of these rights prior

to or during the May 2, 2008 hearing. Therefore, his failure to take advantage of these opportunities when given the chance is counter to his argument here. Based on the evidentiary record, Applicant's claim that he was not afforded certain rights is not credible, and the Court rejects it.

### 2. Timeliness of Notice

Applicant contends that he did not receive the amended incident report sufficiently in advance of the disciplinary hearing.[4] The regulation relevant to Applicant's claim is 28 C.F.R. § 541.17(a), which states that an inmate shall be given "advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the Discipline Hearing Officer . . . ." As above, Applicant does not cite the relevant provision of the C.F.R. except to note that his due process was violated because "28 C.F.R. Part [sic] 541" was not followed. *Application* [#1] at 4. However, given Applicant's *pro se* status, the Court notes the specific section relevant to Applicant's claim.

The incident that gives rise to this claim occurred on April 3, 2008 when Applicant failed to provide a urine sample for a drug test. *DHO Report* [#10-3] at 1, 3. Applicant was provided an initial incident report on April 3, 2008. *Id.* at 3; *Application* [#1] at 2. Sometime after the UDC hearing on April 9, 2008, the DHO found that the incident report was insufficient and ordered that the report be amended. *DHO Hearing* [#10-3] at 3. As a

---

[4] To the extent that Applicant alleges that the initial hearing was not held within seventy-two-hours of his receipt of the incident report, this claim lacks merit because (1) the seventy-two-hour requirement for the hearing is discretionary not mandatory, see 28 C.F.R. § 541.15(b), and (2) a prison's failure to follow its own procedures is not, on its own, a constitutional violation. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993). Further, to the extent that Applicant also alleges that he did not receive the incident report within twenty-four hours of the incident, the incident occurred on April 3, 2008, and Applicant indicates in his Application that "he originally received" the incident report on April 3, 2008. *Compare Application* [#1] at 2, *with id.* at 4. Therefore, this allegation has no factual basis and is summarily rejected.

result, the incident report was amended and, according to the DHO Report, Applicant received the amended incident report on April 23, 2008.[5]  *Id.*  However, just prior to the May 2, 2008 hearing, Applicant informed the DHO that he had not received a copy of the amended incident report.  *Id.*  The DHO provided him a copy at that time and "advised [Applicant that he] was going to postpone the hearing to give [Applicant] 24 hours to prepare his defense."  *Id.*  According to the DHO Report, Applicant "wished to waive his 24 hours," and to this end, signed a waiver form.  *Id.*; *Waiver of 24 Hour Notice* [#10-3] at 5.

Nothing in these events suggests that Applicant was prejudiced by the timing of the receipt of the amended incident report.  DHO records indicate Applicant received the amended incident report more than a week before the May 2, 2008 hearing, well beyond the twenty-four-hour requirement.  *See Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993) (noting that due process requirements are satisfied when "written notice of the charges brought against the inmate [is provided] at least twenty-four hours before the hearing").  To the extent that Applicant did not receive the report until the day of the hearing, Applicant waived any due process challenge by informing the DHO that he wished to proceed and by signing a waiver.  *See Hawkes v. Wyo. Dept. of Corr. Honor Conservation Camp*, 124 F.3d 216 (table) (10th Cir. Sept. 4, 2007) (unpublished decision) (holding that "waiver of [Applicant's] waiting period negates his [due process] claim").

From my careful review of the evidentiary record in this case, I find that Applicant was on notice that he had potentially violated BOP drug testing procedures on April 3, 2008

---

[5] Applicant's contention that he did not receive the amended incident report until forty-three minutes before the May 2, 2008 hearing is also refuted by evidence attached to his Application.  *See Application* [#1] at 10.  Specifically, Applicant attaches a copy of the amended incident report which indicates that it was "[d]elivered" on April 23, 2008.  *Id.*  This report includes the allegation that Applicant "was instructed that he could have eight ounces of water and he refused."  *Id.*

10

when he received the initial incident report.  *Application* [#1] at 2; *DHO Report* [#10-3] at 3.  While this report did not mention that Applicant was offered water, Applicant knew the DHO required the report to be amended to contain more information.  According to the DHO, the amended incident report was given to Applicant on April 23, 2008.  *DHO Report* [#10-3] at 3.  Even if Applicant did not receive the amended report until the date of the hearing, he waived (in writing) his right to challenge the lack of sufficient time to prepare his defense.  *Waiver of 24 Hour Notice* [#10-3] at 5; *DHO Report* [#10-3] at 3.  Further, the amended incident report was read into evidence at the May 2, 2008 hearing and, when "asked . . . if the report was true," Applicant's only response was "I tried, but couldn't go." *DHO Report* [#10-3] at 1.  He did not allege that he was not provided water or that the amended incident report contained any false statements.  Based on the evidentiary record, Applicant's claim that his due process rights were violated by the timing of his receipt of the amended incident report is not credible, and the Court rejects it.

### 3. Evidence of Guilt

Applicant claims that there was insufficient evidence to convict him of refusing to take a drug test.  *Application* [#1] at 7.  To be upheld, the disciplinary conviction must be supported by "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). This is not an overly stringent standard. "Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Howard*, 487 F.3d at 812 (quoting *Hill*, 472 U.S. at 455-56).  "The decision can be upheld even if the evidence

11

supporting the decision is 'meager.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

Here, I find that Applicant's disciplinary conviction was supported by sufficient evidence. The amended incident report was prepared after an investigation determined that Applicant "failed to provide a urine sample after two hours, and . . . even refused the eight ounces of water staff had offered [Applicant] to assist [him]." *DHO Report* [#10-3] at 3. Applicant was also told that "an inmate is presumed as unwilling to provide a urine sample for testing after the two hour waiting period." *Id.* At the May 2, 2008 hearing, the amended incident report was read into evidence and, other than his self-serving statement, Applicant failed to present any witnesses or evidence to refute the contents thereof. *Id.* at 1, 3. Applicant's statement is undermined not only by the amended incident report but also by the DHO's additional findings. Specifically, the DHO noted that Applicant previously had been found to have "committed two Code 112, positive urine sample for use of narcotics, and code 113, possession of narcotics at a previous DHO hearings [sic] during [his] incarceration." *Id.* at 3. The DHO also noted that the previous convictions "lessened [Applicant's] denial in this instance." *Id.* Further, it was also persuasive to the DHO that "[t]he reporting employee is under a legal obligation to be truthful while, on the other hand, it would be to [Applicant's] benefit to refuse to provide [his] urine sample." *Id.* I agree.

Considering the above, the DHO's findings are based on more than meager evidence. There is at least "some evidence" in the amended incident report and written DHO Report to justify Applicant's disciplinary conviction. As such, the DHO's decision is supported by sufficient evidence and is not subject to being overturned.

### 4. Appeal

In his final claim, Applicant contends that prison grievance officials "failed to meet Response [sic] due dates." *Application* [#1] at 7. To this end, Applicant asks the Court to "hold B.O.P. [sic] to [the] same standard[s]" as inmates concerning appeals. *Id.* at 8. Although not entirely clear, it appears that Applicant is raising this claim to refute any argument by Respondent that Applicant failed to exhaust his administrative remedies prior to filing his Application. Given that Respondent does not raise an exhaustion defense, Applicant has failed to allege a cognizable injury that any alleged delay in receiving a response to his appeal may have caused. As such, any alleged delay has no bearing on the issues in the current Application. Accordingly, Applicant's final "claim" has no merit.

## IV. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief under 28 U.S.C. § 2241. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED** and that the case be **dismissed with prejudice**.

IT IS FURTHER **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have fourteen (14) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and

specific to preserve an issue for de novo review by the district court or for appellate review.

*United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED:  August 10, 2010

                                      BY THE COURT:
                                      <u>/s/ Kristen L. Mix</u>
                                      U.S. Magistrate Judge
                                      Kristen L. Mix